## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHERRELL C. TOWNS,

               Petitioner,

v.                                      Case No. 25-CV-00042-SPM

JEFFREY WEHKING,

               Respondent.

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Sherrell C. Towns was convicted and sentenced to death by an Illinois state court jury in March 1995 for the murder of five individuals, which took place on November 17, 1993. *See People v. Towns*, 675 N.E.2d 614, 618 (Ill. 1996). The Illinois Supreme Court affirmed his conviction on appeal in December 1996. *See id.* Towns, believing there to be outstanding issues with his case, sought relief through the next avenue available to him: on March 11, 1996, he filed a *pro se* Petition for Postconviction Relief in the Illinois state trial court in which he was originally convicted. *See State v. Towns*, Case No. 1993 CF 01801 (Ill. Cir. Ct. 1993); (*see* Doc. 42, Ex. 2). And there his postconviction petition has languished for the past 29 years without resolution. To this Court's astonishment, Towns' postconviction proceedings have been pending in the same trial court without so much as an evidentiary hearing or a substantive response to the merits of his petition as the case has changed hands of at least 21 court-appointed attorneys and at least seven trial court judges.

As his case remains ongoing even to this day, Petitioner Towns, a current inmate of Centralia Correctional Center, sought relief in federal court by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 19, 2024. (Doc. 1). Jeffrey Wehking, Petitioner's custodian and thus the Respondent in this action, argues that Towns' Petition should be dismissed for Towns' failure to exhaust his state court remedies. (Doc. 42). Towns argues in response that, based on the record in his case, the state court remedy is effectively unavailable to him, and that because there has been an inexcusable, inordinate delay of his state court proceedings, he should be permitted to proceed in federal court. (*See* Doc. 44, pp. 41, 45). This Court agrees.

## FACTUAL AND PROCEDURAL BACKGROUND

Long before bringing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 before this Court, Towns filed a petition for postconviction relief in Madison County State Court, the court in which he was convicted, on March 11, 1996, pursuant to Illinois' Postconviction Hearing Act, 725 ILL. COMP. STAT. 5/122−1 *et seq. See State v. Towns*, Case No. 1993 CF 01801 (Ill. Cir. Ct. 1993). According to Illinois' statutory framework, which was in place at the time Towns originally filed his petition and remains in effect today, postconviction challenges consist of three stages of proceedings. *See People v. Hernandez*, 669 N.E.2d 1326, 1329 (Ill. Ct. App. 1996). First, the circuit court reviews the postconviction petition and dismisses it where the petitioner was sentenced to imprisonment and the court determines that the petition is frivolous or patently without merit. *People v.*

*Coleman*, 701 N.E.2d 1063, 1071 (Ill. 1998) (citing 725 ILL. COMP. STAT. 5/122−2.1 (1994)); *Hernandez*, 669 N.E.2d at 316. If the petition survives this first stage, the proceedings advance; at the second stage, the court may appoint counsel for indigent defendants and counsel is given the opportunity to review and amend the postconviction petition. *Hernandez*, 669 N.E.2d at 316 (citing 725 ILL. COMP. STAT. 5/122−2.1 (1992)). Further, Illinois Supreme Court Rule 651(c) requires appointed postconviction counsel to certify that the attorney has consulted with the petitioner to ascertain their contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that were necessary for adequate representation of the petitioner's contentions. *See People v. Turner*, 719 N.E.2d 725, 729 (Ill. 1999). The State may then respond to the petition and seek to have it dismissed. *Hernandez*, 669 N.E.2d at 316 (citing 725 ILL. COMP. STAT. 5/122−2.1 (1992)). At the third and final stage of the proceedings, the trial court conducts an evidentiary hearing. *Id.* (citing 725 ILL. COMP. STAT. 5/122−2.1 (1992)); *People v. Lemons,* 613 N.E.2d 1234, 1236 (Ill. Ct. App. 1993).

Initially, the Madison County Circuit Court dismissed Towns' *pro se* postconviction petition as lacking merit on June 7, 1996.[1] *See Towns*, Case No. 1993 CF 01801 (Ill. Cir. Ct. 1993). Following a Supervisory Order from the Illinois

---

[1] The following information regarding the history of Towns' postconviction proceedings is gleaned largely from the information available from the face of the docket sheet for Towns' case. *See State v. Towns*, Case No. 1993 CF 01801 (Ill. Cir. Ct. 1993). This Court cannot begin to attempt to fully chronologize the procedural history of his state trial court postconviction proceedings from the past 29 years. Nonetheless, this Court will attempt to paint a picture of how this case has stretched across the past three decades to where it has reached (or, failed to reach) today.

Supreme Court on or about August 2, 1996, however, Towns' petition was reinstated and allowed to proceed to the second stage in October 1996. *See id*.

From the beginning, Towns' case saw a series of troubling months-long delays with little explanation or intervention. While he was quickly appointed counsel from the office of the Madison County Public Defender in October 1996 following the reinstatement of his case, it appears there were initial hiccups with Towns' representation for months thereafter. *Id.* One month after the appointment, the Madison County Public Defender's office sought to withdraw; a Special Public Defender was subsequently appointed on November 6, 1996. *Id.*; (*see* Doc. 42, Ex. 4, p. 7). In January 1997, the trial court granted counsel leave to withdraw, substituting a local attorney at the same time. *Towns*, 1993 CF 01801; (*see* Doc. 42, Ex. 4, p. 7). Twelve months later, in January 1998, that attorney purportedly wrote the Capital Litigation Division of the State Appellate Defender's Office requesting relief from the assignment "citing the large volume of trial matters that then required counsel's attention." (Doc. 42, Ex. 4, p. 7). In the meantime, Towns had written to the trial court in May 1997 reporting a problem between him and his counsel at the time. *Towns*, 1993 CF 01801. The docket reflects that Towns was appointed Office of the State Appellate Defender attorney Timothy Gabrielsen on May 16, 1997. *Id.* Gabrielsen did not enter his appearance in the matter until April 9, 1998, eleven months later, at which point the case was already two years old. *Id.* On top of that, another additional seven months elapsed after Gabrielsen entered the case before the trial judge set the matter on a schedule in November 1998 and

had Towns' original postconviction petition transmitted to Gabrielsen for review.
*Id.*

Throughout 1999, the case seemed to have been on track for resolution, as
Towns' counsel submitted numerous motions on his behalf requesting discovery,
leave to take depositions, and funds for a court reporter. *Id.* On May 25, 1999,
Gabrielsen filed a substantive amended petition for postconviction relief on Towns'
behalf. [2] *Id.*; (*see* Doc. 42, Ex. 4). With the filing of his amended petition, Towns had
requested leave to amend his petition following the resolution of Remon Williams'
and Michael Coleman's cases, both of whom were his codefendants in the
underlying criminal case. *Towns*, 1993 CF 01801; (Doc. 42, Ex. 4, p. 63). Several of
Towns' arguments in his postconviction petition pointed to the disparity between
the prosecution seeking the death penalty against Towns, who was tried
individually, and the prosecution's decision to try his codefendants Williams and
Coleman together and not to seek the death penalty against either of them. (*See*
Doc. 42, Ex 4). The Illinois Supreme Court ordered in December 1998 that the trial
court retry Williams and resentence Coleman, and as a result, Towns requested
leave to amend his arguments following the outcome of their cases. *See People v.
Williams*, 695 N.E.2d 380 (Ill. 1998); (*see* Doc. 42, Ex. 4). The trial court granted
Towns' request, indefinitely continuing the matter in February 2000. *Towns*, 1993
CF 01801.

---

[2] The Court pauses here to note that Petitioner Towns contends that Gabrielsen's amended petition,
filed on May 25, 1999, was the only substantive petition submitted on his behalf by any of his
representatives. (Doc. 44, p. 38). Towns also contends that the discovery motions filed at this time were
never adjudicated; the accuracy of these contentions is unclear to this Court. (*Id.*, p. 4).

While Coleman was subsequently resentenced in 2000, Towns' case saw essentially no activity until he filed a series of letters and *pro se* motions to the trial court beginning in May 2002, requesting a copy of his docket sheet and appointment of new counsel. *Id.* A hearing was held several months later in August 2002, but following this, the proceedings were still slow moving. *Id.* During this time, Towns attempted to file his own *pro se* Second Amended Petition for Postconviction Relief on October 7, 2002.[3] *Id.* In October 2002, Towns sought to subpoena records from the Illinois Department of Corrections ("IDOC"); his counsel at the time requested subpoenas for "any and all prison records and prison medical and psychological records concerning Sherrell Towns" to issue on October 30, 2002.[4] *Id.* On March 14, 2003, the court granted the motion and ordered the subpoenas to IDOC to issue. *Id.* Additionally, in June 2003, the state court ordered Towns to submit his amended petition or state his intent to stand on his current pending petition within ninety days. *Id.* However, no amended petition was filed at the time, and the case entered a protracted period of inactivity.

From June 2003 to approximately March 2006, Towns' case essentially stood motionless, aside from numerous *pro se* filings by Towns requesting discovery, compulsion of the subpoenaed materials from IDOC, appointment of counsel, a copy

---

[3] The Court notes that Illinois law provides that individuals represented by counsel do not have the authority to file *pro se* motions, and that trial courts should not consider such motions, absent a *pro se* motion directed at counsel's performance. *People v. Bell*, 100 N.E.3d 177, 182 (Ill. App. Ct. 2018) (collecting cases).

[4] While not clear from the face of the docket sheet for what purpose the subpoenas were sought, this Court notes that in his *pro se* Second Amended Petition, Towns claimed, among other things, that he was ingesting psychotropic medication under medical direction at the time of his trial and capital sentencing hearing but had not been given a hearing to determine his fitness to proceed. (Doc. 42, Ex. 7, p. 8).

of records of his docket sheet and motions previously submitted by Towns or his counsel, and discovery, each of which went unanswered. *Id.* A status hearing was held on May 17, 2005, but another ten months followed with no substantive activity in the case until March 2006.

On March 28, 2006, as the case officially entered its tenth year pending before the trial court, Towns' counsel filed a Motion for Fitness Determination to proceed in his postconviction matter. *Id.* An astounding six years would pass before Towns' competency to proceed in his postconviction matter would be adjudicated. Following an April 2006 hearing on the motion, the case was stalled until July 2007, when it appears that Towns' counsel at the time was attempting to procure funds to conduct an expert evaluation of Towns' fitness to proceed.[5] *Id.* It was not until December 2010 that an examiner was appointed for Towns' matter to determine his fitness. *Id.* The case was indefinitely continued, however, with no activity occurring in the matter until November 2011, when the court directed the clerk to forward the examiner appointment and Towns' 2006 motion for fitness examination to be forwarded to the appointed expert. *Id.* It appears that shortly thereafter Towns was

---

[5] In February 2008, it appears the trial court considered a motion argued by the parties which was taken under advisement; it was not until April 2009, fourteen months later, that any activity took place in the case per the docket until Towns' attorney moved to withdraw on April 1. *Id.* Towns' counsel was permitted to withdraw on April 30. *Id.* It appears hereafter that procuring appropriate counsel for Towns caused another series of delays lasting many months before the issue was resolved, for the time being, in August 2010. *Id.* Towns requested to discharge counsel who was appointed next at a hearing in December 2009; Towns subsequently filed *pro se* motions for discovery and supplement to his second amended petition on December 10, 2009. *Id.* Towns' counsel moved withdraw in February 2010, which was granted. *Id.* New counsel was appointed for Towns in March 2010 as the case entered year fourteen pending before Madison County Circuit Court. *Id.* It is unclear whether appointed counsel was active in the case, as in July 2010, the court stated it was still to be determined who was representing Towns, but on August 24, 2010, it appears Towns decided to proceed with appointed counsel at the time. *Id.*

interviewed, but it was not until Towns filed a motion *pro se* on February 28, 2012, that a status hearing on Towns' fitness to proceed was scheduled. *Id.* On April 18, 2012, Towns was determined to be competent to proceed. *Id.*

Despite the greenlight from the trial court to proceed in this matter with Towns having been determined competent, the case did not move forward. From April 2012 to February 2016, this Court observes a series of continuances ordered in this case as well as another series of unsuccessful appointments of counsel which significantly derailed the development of the merits of the case. Towns' counsel withdrew in November 2012, and Towns was not appointed new counsel, nor did his case proceed, for an astounding twenty months, after he was appointed counsel finally in June 2014 and his counsel requested funds for an evidentiary hearing on July 17, 2014. *Id.* Towns' counsel subsequently withdrew in September 2014, with new counsel appointed at the same time. *Id.* More than five months later, on February 25, 2015, it appears this Court determined that prior defense counsel had no longer been accepting special public defender appointments, and new counsel was appointed at the same time. *Id.* It is unclear whether Towns' newly appointed counsel ever appeared in the matter; Towns moved to discharge his counsel in September 2015 and, after a hearing was held on November 4, 2015, where his counsel did not make an appearance, he was granted new counsel. *Id.* The Court notes that it was at this point, in late November 2015, during the case's nineteenth year, that the trial court appointed Towns counsel with a warning that no further appointment was to be made. *Id.* This appointment proved unsuccessful, however,

and a new attorney was appointed in February 2016. *Id.*

It appears from the record that in 2016 it came to the attention of the parties and the court that Towns' case files were lost and had been for some amount of time. Following counsel's appointment on February 29, the docket sheet reflects that a status conference was held on June 1, 2016, whereby the court ordered the state and counsel for Towns to schedule a mutually agreeable time for Towns' attorney to review the state's case file. *Id.* Towns contends that at this point, the record in his case had been lost for several years.[6] (*See* Doc. 44, p. 23). Nearly five months later, on November 29, 2016, the trial court ordered the state to produce to Towns a copy of the file within seven days; on December 5, 2016, it appears the record had been made available. *Towns*, 1993 CF 01801.

Following this, as the case entered its twenty-first year, things were still static, but it appears the trial court began to take a step back for what appears to be the first time in earnest to address the numerous appointments of counsel in a

---

[6] Towns cites to a letter that his counsel at the time sent him on June 19, 2016, in which his counsel writes the following:

> "I am still trying to compile a full case file on 1993-CF-1801. The task hasn't been easy, but on June 1, 2016, in a meeting with [the trial judge and the prosecutor on the case], the Judge instructed [the prosecutor] to send me a list of dates when I would be allowed to view the State's complete version of your file. Just yesterday, I sent [the prosecutor] a reminder asking her to provide me with those dates, as she has not yet complied with the Judge's instruction. Additionally, I have been in contact with several of your previous attorneys and have been uniformly informed that they have no portion of the original file associated with your case. As such it is still unfortunately lost; as it has been for several years now, well before I entered on your case."

(Doc. 44, Ex. 4, pp. 22−23). Towns' attorney goes on to inform him that Towns' counsel who withdrew in March 2006 was the only of Towns' prior counsel to forward any information (35 Microsoft Word Perfect files) to Towns' attorney in 2016. (*Id.*); *Towns*, 1993 CF 01801.

substantial way (though ultimately it was in vain). In June 2017, the trial court learned that Towns' counsel had been hospitalized indefinitely; it appears that at a hearing on June 21, 2017, Towns indicated his desire to proceed *pro se* and the hearing was continued. *Id.* Subsequently, on July 6, the trial court ordered that Towns had effectively waived his right to counsel by his actions and his conduct in the matter and ordered him to proceed *pro se* and discharged his counsel. *Id.* Towns subsequently filed a motion for production of the record in the two cases of his codefendants Coleman and Williams, a motion for allocation of funds for investigation of postconviction claims, motion for discovery, and supplemental motion for discovery on July 31, 2017. *Id.* A hearing was set for August 2017 and later cancelled without being rescheduled. *Id.* In December 2017, Towns filed a motion to proceed on his original Amended and substitute Second Amended Petition and to withdraw others and requested leave to amend or supplement his Second Amended Petition. *Id.* Yet, despite these filings, the trial court did not set a hearing on the matter until August 2018, and it is unclear if the motions were addressed by the state or the trial court. *Id.*

On September 10, 2018, after fourteen months of self-representation, Towns filed a motion for reinstatement of counsel. *Id.* Without explanation, and contrary to its prior holding that Towns had waived his right to future appointments, the trial court appointed Towns new counsel in November 2018. *Id.* Towns received a substitute counsel appointment in February 2019. *Id.* Over the next several months, hearings set for February 2019, May 2019, and August 2019 were all continued;

Towns' counsel withdrew in October 2019. *Id.* Subsequent hearing set for December 2019 was additionally rescheduled. *Id.*

The case approached its twenty-fourth year as 2020 arrived along with the Covid-19 pandemic. Towns' hearing set for April 2020 was cancelled without a future date having been set. *Id.* The next twelve months in Towns' case elapsed entirely untouched, with Towns having filed numerous *pro se* motions in August, September, October, November, and December 2020; and January, February, March, and April 2021 requesting status hearings, new counsel, dismissal of his case, change of venue, discovery from the state, and to appear in person with private counsel that all went unanswered until the trial court set a hearing for May 2021. *Id.* Towns' counsel was allowed to withdraw in May 2021 with new counsel appointed the same day. *Id.* At a November 2021 hearing, Towns was given forty-five days to file any amended pleadings, with his counsel having received a copy of his record in December 2021; but subsequently in April 2022 counsel withdrew and was replaced. *Id.* Further, no amended petition was filed. Subsequently, status hearings in May 2022, August 2022, and November 2022 were continued. *Id.* Towns' counsel moved to withdraw on December 28, 2022, which was not adjudicated until August 2023, when it was granted. *Id.*

It appears that Towns has proceeded *pro se* in this matter since August 2023. *Id.* Towns filed a motion to convert his petition for clemency to his substitute postconviction petition on August 31, 2023. *Id.* Hearings were held before the trial court on November 2, 2023, and January 30, 2024, with the subject matter unclear

from the face of the docket. *Id.* Thirteen months elapsed until it appears Towns filed a motion to clarify on which pleadings he was proceeding; Towns requested status hearings and for the sitting judge to be substituted in May and July of 2024. *Id.* After the trial court judge recused herself in August 2024, Towns again requested a status hearing in October 2024. *Id.* A hearing was held on February 19, 2025. *Id.*

On March 12, 2025, Towns filed a motion for change of judge. *See Towns*, 1993 CF 01801. On May 21, 2025, the trial court denied Towns' motion, stating he has not met his burden of presenting sufficient evidence of bias, and stating that the matter was referred to the assigned trial judge "for setting as expeditiously as possible." *Id.* Two months later, on July 25, 2025, the trial court called the matter on its own motion, stating in part that the state had thirty days to file a response to Towns' third amended petition.[7] *Id.* As of August 26, 2025, the state requested additional time to file its motion, and the matter was reset for September 19, 2025. *Id.*

Towns originally filed his *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the U.S. District Court for the Central District of Illinois on

---

[7] The trial court additionally held that "following withdrawal of Defendant's request of his counsel Dawson on 8/31/2023, that Defendant proceeding *pro se* orally adopted certain *pro se* discovery motions, which he had previously filed while represented, that were not adopted by counsel through his 2/26/2024 motion to clarify proceedings." *Towns*, Case No. 1993 CF 01801. The Court further stated that it "explicitly denies each discovery motion and request for funds." *Id.* This Court additionally notes that it is unclear to this Court which "third amended petition" to which the trial court refers – whether this is Towns' December 22, 2017, filing of "Motion to Proceed on Petitioners Original Amended, and Substitute Second Amended Petition for Post Conviction Relief and to Withdraw Others, Motion for Leave to amend or Supplement Second Amended Petition for Postconviction Relief" and accompanying exhibit filed on the same day; whether this is Towns' August 31, 2023, "Motion to Bifurcate Proceedings, Motion to Convert Clemency Petition in to Substitute Post Conviction Petition;" or some other filing not apparent to this Court on the face of the docket sheet. *See id.*

December 19, 2024, as he was, at that time, incarcerated at Danville Correctional Center in Danville, Illinois.[8] (*See* Doc. 1). On January 10, 2025, following Towns' transfer of prison facilities to Centralia Correctional Center in Centralia, Illinois, the Central District transferred the matter to this District.[9] (*See* Doc. 13). On May 12, 2025, Respondent Wehking filed a Motion to Dismiss, arguing that, because Petitioner Towns had not exhausted his state court relief, and because he cannot excuse the exhaustion requirement based on inordinate and unjustifiable delay, his Petition should be dismissed without prejudice. (Doc. 42). Wehking argues that Towns, rather than the state, is responsible for the inordinate delay of his state trial court proceedings. (*See id.*). Petitioner Towns filed his Response on June 11, 2025. (Doc. 46).

## LEGAL STANDARD

A person in custody pursuant to the judgment of a State seeking a writ of habeas corpus must typically exhaust the available state court remedies prior to seeking federal relief. 28 U.S.C. § 2254(b)(1)(A); *see also Evans v. Wills*, 66 F.4th 681, 682 (7th Cir. 2023); *Parker v. Duncan*, No. 3:15-cv-00326-DRH, 2015 WL 1757092 (S.D. Ill. April 15, 2016) (citing *Moleterno v. Nelson*, 114 F.3d 629, 633 (7th Cir. 1997)). The exhaustion requirement is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are

---

[8] Towns originally named Felicia Adkins, the Warden of Danville Correctional Center, as the Respondent in this action. (*See* Doc. 1).
[9] Jeffrey Wehking, the Day-to-Day Warden of Centralia, was substituted as the Respondent pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts on January 27, 2025. (Doc. 20).

presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires one complete round of state appellate review as well as complete exhaustion of the postconviction remedies made available to individuals by the state. *See Evans*, 66 F.4th 681, 682 (citing *Lane v. Richards*, 957 F.2d 363, 364−65 (7th Cir. 1992)).

In requiring exhaustion of available state court remedies prior to proceeding in federal court, Congress acknowledged that there may nonetheless be circumstances in which "there is an absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant," such that an applicant for a writ of habeas corpus need not demonstrate complete exhaustion for their matter to be heard in federal court. 28 U.S.C. § 2254(b)(1)(B); *see Evans*, 66 F.4th at 682. A state law remedy may become ineffective or unavailable by virtue of delay where that delay is both inordinate and attributable to the state. *Evans*, 66 F.4th at 682 (citing *Carter v. Buesgen*, 10 F.4th 715, 723−24 (7th Cir. 2021), *Lane*, 957 F.2d at 364−66).

Two recent cases from the Seventh Circuit establish clear principles for evaluating whether a delay has been inordinate and is attributable to the state. First, in *Carter*, the Seventh Circuit found, upon examining the record, no other reasonable conclusion than that a delay of more than four years in the pendency of Marvin Carter's postconviction relief motion was extreme and that the state court remedies available to Carter were ineffective to protect his rights. 10 F.4th at 723. The Court first noted that a ten-month delay occurred from the time that Carter

filed a notice of his intent to pursue postconviction relief to the time that the clerk and court reporter located and shared the trial transcripts with Carter's appointed counsel. *Id.* at 718. Next, the Court observed a total of twelve requests for extension of time by Carter's counsel, and a total of three requests for extension by the Wisconsin trial court or appellate court, which, as the Court found, were each granted "in rote fashion." *Id.* at 718, 723. Having determined that, in the four years and counting since his conviction and sentence, not a single court had reviewed Carter's sentencing challenge, no substantive motion had been granted or denied in the matter, and no administrative procedure had been in place to detect or end the stagnation in the matter, the Seventh Circuit held that Carter was excused from exhausting his case in state court and instead may bring the claims alleged in his state motion for postconviction relief directly to federal court. *Id.* at 723 (citing *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997)).

Two years after its decision in *Carter*, the Seventh Circuit held in *Evans* that a delay of more than twenty years in James Evans' postconviction proceedings before an Illinois trial court was "beyond the pale and indefensible." 66 F.4th at 682. Evans filed his petition for postconviction relief in 2003, but still sixteen years after filing, the Illinois trial court had yet to hold an evidentiary hearing in his matter or reach any conclusions as to the merits of his claims. *Id.* Evans then filed a petition for a writ of habeas corpus pursuant to § 2254, and the Court held that Evans could proceed on his claims in federal court without having exhausted his available state remedies, as not only had Illinois postconviction proceedings proven ineffective for

Evans, but Evans had in fact experienced a breakdown in the state process. *See id.* at 687.

The Seventh Circuit concluded that Illinois postconviction relief proceedings had failed Evans in both a narrow and in a broad sense. *Id.* at 685. The Court first examined a protracted delay Evans experienced in receiving his requested discovery that it found was in no way attributable to anyone but the state. *Id.* at 683, 685. Nearly three years had elapsed from the time Evans began making discovery requests for audiotapes from the state (in December 2008) until the state came forward with some, but not all, of the missing tapes (in June 2011), only after the trial court had ordered the state twice to comply. *Id.* As of 2023 Evans maintained he had not received all of the missing audiotapes. *Id.* The Court found this particularly unsettling in light of the fact that Evans had requested the tapes numerous times both by counsel and by letters he himself filed with the Illinois trial court. *Id.* The Court next noted a 6-year delay from the adjudication of the state's motion to dismiss in 2014 to the state's request for an evidentiary hearing in 2020, stating that neither side had taken any action to advance the litigation forward in the meantime. *Id.* at 684. Other setbacks additionally contributed to the delay, including continuances, cancelled hearings, attorney withdrawals due to conflicts of interest, and lengthy periods of inactivity, some of which the Court attributed to Evans and his counsel along with the state and even the trial court. *Id.*

Of equal importance to the Court's analysis, the Court's examination of the state court proceedings led it to conclude that Evans experienced a breakdown in

the state's process altogether as his case remained pending for two decades and counting. *Id.* at 685. Not only was the length of time itself of concern to the Court, but additionally the light it shed on the Illinois trial court's lack of priority for Evans' case and the inability for any of the actors involved to intervene:

> "We see things that way not just because twenty years have now passed with Evans' case still pending, but also because the state court docket shows a general lack of action or urgency by all involved. The prosecutors seem intent on allowing the case to linger indefinitely, and the state court, as best we can tell, seems to have done nothing to move things along despite recognizing the barriers to relief that Evans faced."

*Id.* At some point, the Court held, the delay should have spurred the state trial court to action, as the state's seriously deficient management of Evans' claims rendered the postconviction relief process ineffective. *Id.* The Court held that these delays, too, were attributable to the state. *Id.* at 686. Based on this analysis, the Court concluded it had ample grounds to find that Illinois postconviction remedies had proven ineffective for Evans, such that his petition for habeas corpus may be heard absent a complete exhaustion of his state court remedies. *Id.*

## DISCUSSION

Respondent, in his Motion to Dismiss on the basis that Towns has not exhausted his state court remedies, concedes the nearly three-decade long delay in Towns' state court postconviction proceedings has been inordinate. (Doc. 42, p. 18). Nevertheless, the state vigorously maintains that the delay is not unjustifiable because, it argues, it is the result of Towns' own conduct (and that of his attorneys) which is the primary source of the delay, not the state. (*Id.*, p. 18, 20). Respondent argues that Towns "all but conceded" in 2020 that the state is not the cause of the

delay but rather it is his "extensive list of attorneys." (*Id.*, p. 20). Towns, according to the state, engaged in a pattern of clashing with and cycling through his attorneys, undercutting their efforts at nearly each turn and preventing them from effectively representing Towns in this case before seeking to discharge them. (*See id.*). The resulting delays accompanying discharging and appointing new counsel, as well as the time it requires for each new counsel to review the increasingly expansive record, are all attributable to Towns, according to Respondent. (*See id.*, p. 22).

Wehking does acknowledge that "the docket reflects petitioner's appointed counsel bears some blame," pointing to several instances illustrating this: following the 2006 conviction of Towns' co-conspirator, counsel failed to file an amended postconviction petition; following Towns' determination to be competent to proceed in 2012, no amended postconviction petitions were filed; and following having been ordered by the court in 2003 and 2021 to file an amended postconviction petition, none had been filed. (*Id.*, p. 21). The state argues that, despite this, poor performance by counsel is not grounds to excuse exhaustion, and if Towns was not pleased with his appointed counsel's performance, he should have waived his statutory right to counsel and sought to rest on his pleadings in order to obtain a prompt ruling instead of moving for new counsel. (*Id.*). "[A]ll that remains," according to Respondent, "is for petitioner to stop amending the operative pleadings so that the state court can adjudicate whatever claims he ultimately decides to press," and the state, the prosecutors, and the court have "done their level best" to get Towns to do so. [10] (*Id.*,

---

[10] Respondent also argues that Towns confused the record in this matter, resulting in further delays attributable to Towns, not the state, by filing matters *pro se*, such as supplemental or amended

p. 25).

This Court disagrees and finds Respondent's arguments untenable in light of the record. As an initial matter, blaming Petitioner for the numerous delays associated with appointing new counsel and summarily stating that he has been an obstructive force to each of his attorneys is an oversimplification of this matter and fails to account for the entire picture here, which is far more complex than Respondent makes it seem. Looking at the record, this Court recognizes that there exists, at least in some instances, a pattern of Towns receiving appointed counsel only to seek to discharge them in short order. The Court also recognizes that at least one of the trial judges presiding over this matter—who was certainly more familiar with this matter by having observed interactions between Towns and his many counselors and having more factual detail as to reasons Towns or his counsel no longer wished to continue their professional relationship—found that much of Towns' conduct of failing to cooperate with his attorneys and instead seeking to discharge them and filing ARDC complaints against them "has been for the purpose of delay." (*See* Doc. 42, Ex. 27, p. 1).

However, nowhere in the record before this Court is there detailed information as to each and every attorney's decision to seek leave to withdraw or Towns' reasons for seeking their discharge; moreover, there are numerous instances where counsel was excused and replaced for other purposes other than a purported inability to work

---

petitions or seeking to supersede his pleadings by filing his executive clemency petition in his postconviction matter. (Doc. 42, p. 24). According to the state, "any reasonable trial judge would have lost the plot a long time ago." (*Id.*).

with Towns. For instance, the trial court appointed several attorneys for Towns over the years only to excuse their appointment months later after apparently discovering that selected counsel was either no longer at their previous position (such as at the Office of the State Appellate Defender) or no longer accepted such appointments for indigent litigants in postconviction proceedings. *See Towns*, 1993 CF 01801. Others were unable to continue working on the case because they fell ill, as did Towns' counsel in 2016, or were unable to meet the demands of the case and its large record in light of other work demands, as was the case for appointed counsel in 1997. *See id.*

Putting aside the issues apparent with Towns' representation before the Illinois trial court, this Court can reach no other conclusion other than that there has been extreme inordinate delay in Petitioner Towns' state trial court postconviction proceedings. Overall, it is apparent to the Court that the state law remedy available to Petitioner Towns has proven wholly unavailable to him, and Towns, like the petitioner in *Evans*, has experienced a regrettable breakdown in the state trial court system altogether. Indeed, there has been inordinate delay in Petitioner Towns' case in both a narrow sense and in a broad sense, and on the whole, the record in this matter clearly demonstrates that the delays are not entirely attributable to Towns by any measure. *See Evans*, 66 F.4th at 685.

This Court can point to numerous, isolated periods of protracted delays which would likely, even on their own, support a finding that state court remedies had proven unavailable to Towns. For instance, even at the outset of this case in 1996, there was a nearly two-year delay from January 1997 to November 1998 in securing

Towns counsel and transmitting the record of the case to his counsel, which this Court cannot say was in any way attributable to Towns, but rather is attributable to the state and specifically the trial court for their role in securing counsel. Next, from February 2000 to August 2002, there was essentially no substantive activity in the matter following an indefinite delay of the proceedings while the parties waited for two of Towns' codefendants' cases to be resolved. However, one of Towns' codefendants had been resentenced in 2000, which would have allowed the case to move forward as to the arguments regarding that codefendant's sentence at a minimum. Not only was this delay not attributable to Towns, but it appears to this Court that it was a series of Towns' *pro se* filings beginning in May 2002 which brought the case back onto the trial court's docket. Another delay of essentially no substantive activity as to the merits of Towns' postconviction petition, this one nearly three years, took place between June 2003 to March 2006. Again, it appears to this Court that several successive *pro se* filings from Towns that appear to be almost a cry for help to the trial court to turn their attention to his matter, many of which went unaddressed for months at a time.

As the case entered its tenth year before the trial court, this Court observes that it took *nearly six years* to adjudicate a motion for fitness determination filed by Towns' counsel in March 2006. In fact, it appears that Towns was not interviewed for his fitness determination until December 2011, not to mention an entirely unexplained gap in substantive proceedings from February 2008 to April 2009, which, on its own, greatly troubles this Court. Not only does this Court find that this delay

is attributable to the state and to the trial court, but again, notes that it was Petitioner Towns, filing a *pro se* request in February 2012 for a hearing as to his competence to proceed, who seems to have once again brought his matter to the trial court's attention rather than the prosecutor or even his own attorney having done so.

Despite Towns' apparent readiness to proceed in the matter as of 2012, this Court does not discern, at any point since then, meaningful development in this matter towards reaching an evidentiary hearing on Towns' claims or adjudication of the merits of his postconviction petition. From 2012 to 2016, there appear to have been very little substantive developments, with an alarming twenty-month delay from November 2012 to June 2014 due to a lengthy series of continuances of hearings that this Court cannot say is attributable to Towns. It appears that nearly the entire calendar year of 2016 may well have been spent attempting to locate Towns' case file and making it available to his counsel, as his counsel at the time wrote to Towns that he had not yet been able to review his client's file, and the record had apparently been lost for some time. Again, this Court cannot fault Towns for delays associated with the potentially lost file and pauses to reflect here that the case was already twenty years old at this point and, unfortunately and inexplicably, far from over. While Towns began to represent himself for the first time in 2017, his case still saw little substantive development; after requesting appointed counsel again to get his case back on track, a successful appointment of counsel proved difficult, and another series of continuances and delay followed. As 2020 approached and the Covid-19 pandemic raged shortly thereafter, this Court understands the initial difficulties of navigating

virtual hearings and communications with clients who are incarcerated; still, this Court is troubled that Petitioner Towns' numerous *pro se* filings throughout fall 2020 and spring 2021 all went unaddressed until a hearing was set for May 2021 (during which no substantive developments appear to have been made, and Towns' counsel once again withdrew from the case). Since 2023, Towns has once again been representing himself in this matter, and this Court notes that much of the proceedings have focused on Towns' attempts to obtain a new judge for his matter. Notwithstanding, the above recounting of the record in this matter clearly shows that the state and the trial court have been the cause of much of the delay in this case, and this Court cannot in good faith attribute numerous, months-long (or sometimes years-long) delays with little substantive activity as attributable to Petitioner Towns.

It is not only these examples, however, which cause this Court grave concern for Towns' due process rights. Rather, as did the Seventh Circuit in *Evans*, this Court takes a step back to look at the bigger picture. This matter, at some point in the lifetime of the case, crossed the desk of likely upwards of thirty members of the legal profession, between approximately twenty-one attorneys appointed to represent Towns, the seven different trial judges who oversaw this case at various points, and the state prosecutors who were responsible for responding to Towns' petitions. At no point was there a meaningful or effective intervention on the part of Towns' numerous attorneys nor the state in this matter such that it might have reasonably been set on a path to resolution. *See Evans*, 66 F.4th at 686 ("But at some point, the delay – and [petitioner's] confusion – should have spurred the state trial court and the defendants

named in the state postconviction proceeding to act."). Nor does it appear that any mechanism was in place, much less utilized, for spotting the serious breakdown in the process of adjudicating Towns' petition such that it could be handled expeditiously. *See id.* ("What alarms us so much about all of this is that the state trial court and the prosecutor's office apparently lacked a mechanism to break up the impasse or otherwise manage [petitioner's] petition.").

This Court does recognize that the trial court judge in July 2017 attempted to grab the reins on this matter and ordered that Towns was no longer entitled to have additional attorneys appointed in this case, seeming to have attempted to cut off the delays caused by appointing new counsel. However, the matter was shortly thereafter assigned to a different trial judge who, fourteen months later, appointed new counsel for Towns in spite of this prior decision. Other judges issued hard deadlines for Towns to file an amended postconviction petition (which would often come to pass with no activity) or used language in their order that the case need be resolved expeditiously, but this Court has yet to see consequential action on behalf of the state to get this matter even to its evidentiary hearing. Certainly, as the case reached the ten-year mark in the proceedings before the trial court in 2006, the same year that Towns' other coconspirator's case was resolved (which seemingly would have allowed the merits of the petition to move forward), alarm bells should have been ringing for all parties involved. The longer the case endured, reaching year fifteen, then twenty, then a whopping twenty-five years, the louder the bell should have rung. Yet it appears that the warning sirens in this case either never truly sounded in the first

instance or went unheard altogether. Moreover, these delays are certainly not without consequence. Not only has Petitioner Towns not been provided with a meaningful opportunity to be heard on the merits of his claims, but over three decades have passed from the time of the underlying criminal activity, and over that time, evidence becomes lost or damaged and witnesses pass away, move away, or forget what they knew about the case altogether.

Respondent attempts to distinguish this case from *Evans* by arguing that, unlike the *Evans* matter, which saw delays due to the state's failure to turn over requested trial exhibits, there is no indication that this matter is impeded by any discovery error by the state or any other state action. (*See* Doc. 42, p. 25 (citing *Evans*, 66 F.4th at 683−84)). Not only does this Court disagree, but this argument misses the entire point of the Seventh Circuit's analysis in *Evans*. As an initial matter, this Court points to a delay of six years in total for Petitioner Towns to have been evaluated for his competency to proceed in the postconviction proceedings; while it does not appear that the state was deliberately interfering with his ability to be interviewed by an expert, there also appears to have been no attempt by the prosecution at any point in time to seek an expeditious resolution of the matter such that they might proceed with the case. Moreover, as was the Court in *Evans*, this Court is troubled by the *systemic* failure of the trial court to have managed this case, as evidenced by a total lack of urgency or effort on behalf of Towns' counsel, the prosecution, and the trial court to resolve this case.

This Court holds that, due to the inordinate delay in this case that is not

excusable and certainly not attributable to Petitioner Towns; and because his state court remedy has proven unavailable to him, the traditional requirement that Towns exhaust his available state court remedies before proceeding in federal court on his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is excused. Towns may proceed on the merits of his Petition before this Court.

CONCLUSION

For the reasons set forth above, Respondent Jeffrey Wehking's Motion to Dismiss (Doc. 42) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 4, 2025**

<u>**s/ *Stephen P. McGlynn***</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**